GLASSEY, Respondent, v. SLIGO FURNACE COM-
PANY, Appellant.

St. Louis Court of Appeals, June 5, 1906.

1. **PLEADING: Demurrer: Waiver by Answering Over.** On the
overruling of a demurrer to a petition, the defendant waives
the demurrer by answering to the merits.

2. **CONVERSION: Demand: Pasturing Cattle.** In an action by the
owner of a lot of cattle for the conversion of the same by the
owner of a pasture in which they were placed for pasturage,
the evidence showed that at the end of the season the de-
fendant notified the plaintiff to come and get them and in re-
sponse to the notice the latter sent his agent to receive them,
when it was discovered that some of them were missing and
the defendant promised to hunt up the missing cattle and notify
the plaintiff when they were found. The cattle were never
found. *Held*, a formal demand to entitle the plaintiff to main-
tain the suit was unnecessary.

3. **AGISTMENT: Contract of Pasturage: Reasonable Care.** Where
a contract of agistment provided that the owner of the pasture
should employ a man to give his entire time to looking after
the cattle in the pasture, in which they were placed by the owner
for the season at a stipulated sum, although the contract said
nothing about fences, the owner of the pasture was bound
to use reasonable diligence to confine the cattle to the pasture
and if it undertook to do so by fences, it was bound to use
reasonable diligence to keep the fences in repair so as to pre-
vent the escape of the cattle and if they escaped on account of
the failure to use such diligence and care, it was liable to the
owner for their loss.

4. **PRACTICE: Timely Objection.** An objection to the admissi-
bility of evidence, if not made at the trial, can not be avail-
able in the appellate court.

Appeal from Dent Circuit Court.—*Hon. L. B. Woodside,*
Judge.

AFFIRMED.

*Wm. P. Elmer* for appellant.

There was no demand upon defendant for the return of said cattle. McRoberts represented the defendant in executing said contract and was superintendent of said company, yet no demand was made on him. (a) Under. the form of conversion sued on (not considering the contract) to-wit: "by failure to deliver to owner on demand," a demand is imperative. Nanson v. Jacobs, 93 Mo. 340, 6 S. W. 246. Sec. 1575, R. S. 1899, does not apply to conversion. Dixon v. McDonald, 92 Mo. App. 480; Bollman v. Peake, 96 Mo. App. 257, 69 S. W. 1058. (b) Such demand must be made before suit is begun. 28 Am. and Eng. Ency. Law (2 Ed.), pp. 707-708; 9 Am. and Eng. Ency. Law (2 Ed.), pp. 208.

*A. E. McGlashan* and *Watson & Holmes* for respondent.

No demand for the return of the property sued for was necessary in this case. Defendant did not plead want of demand in its answer. Moreover, it shows that if a demand had been made it would have been unavailing. R. S. 1899, sec. 1575; Engel v. Dressel, 26 Mo. App. 39; Reid v. Mullins, 43 Mo. 306; Linn Co. v. Bank, 175 Mo. 539, 75 S. W. 393; Westcott v. DeMontreville, 30 Mo. 252; State to use v. Grupe, 36 Mo. 365.

STATEMENT.—Defendant is a corporation organized under the laws of this State and has its principal place of business at Sligo, Dent county, Missouri. It owns a body of land containing twenty-seven hundred acres, lying in Dent county and the adjoining county of Crawford, inclosed by a post and wire fence. It is pasture land and much of it is covered with a thick growth of underbrush. On May 5, 1904, defendant received from plaintiff twenty-six steers and four heifers to be pastured on its land during the season of that year, and executed and

delivered to plaintiff the following receipt and contract respecting the cattle:

"Received of J. W. Glassey this day, May 5, 1904, twenty-six steers and four heifers, branded as follows: 17 'G' on right hip, 13 'G' on left hip, labeled on right ear. On which this company has received one dollar per head, being in advance on the season's pasturing of 1904, balance of one dollar per head to be paid when cattle are taken out, the price agreed upon being two dollars per head for the season of 1904, in consideration of which the Sligo Furnace Company agrees to allow the aforementioned J. W. Glassey to place the aforementioned number of cattle on what are known as its fenced pastures in Crawford and Dent counties, Missouri, and to employ a man who will give his entire attention to looking after the stock in said pasture and who will see that the said stock are properly salted and have access to plenty of water, at the expense of the Sligo Furnace Company, and it is further agreed and expressly understood that having complied with the above the Sligo Furnace Company will not be held responsible nor guarantee the return of each and every head of stock, but will use due diligence and give all attention above enumerated, with the intention of returning to the rightful owner of stock placed and paid for in its care and pastures.

"All stock must be plainly labeled or branded at the owner's expense and any unruly or breachy stock must be taken away at the owner's expense, when the said owner has been duly notified by mail of such unruliness or breachiness, said notice to be mailed to his last known P. O. address, Cuba, Missouri.

"What is understood by the season is that stock, when placed there, whether remaining until the close of the season or a part of the same, shall be paid for as if they remained there the entire time.

> "SLIGO FURNACE COMPANY,
>
> "(G. L. MORRISON)."

Plaintiff paid defendant thirty dollars — a dollar per head — in advance for the pasturage of the cattle. In October following, plaintiff was notified by James Cooksey, an employee of defendant having charge of the cattle, to come to Sligo and get his cattle. Plaintiff sent his agent to receive the cattle. When the round-up of the cattle was made, fourteen head of the steers were missing and have never been found. The suit is to recover the value of these fourteen steers.

The evidence is all one way, that the pasture was well watered and plenty of salt was kept in it at all times for the cattle; also that defendant employed James Cooksey to look after the cattle. In regard to the fence, the defendant's evidence tends to show that it was composed of white and post-oak posts, set ten feet apart, upon which were strung eight strands of barbed wire, making the fence four and one-half feet high; that on a Saturday in June of 1904, some person or persons cut the wire in one panel of the fence and left it open; that this mischief was not discovered by Cooksey until the following Monday, when he closed the breach. There is no evidence showing or tending to show at what date plaintiff's cattle ecsaped from the pasture. They were not missed until the round-up in October. After they were missed, defendant had the pasture and the surrounding country hunted over to find them but no trace of them was ever discovered. Cooksey testified that either he or one of his boys went around the fence at least three times each week and at no time discovered a breach in the fence before or after the one made in June.

In rebuttal plaintiff's evidence tends to show that the fence had been built for about eight years; that some of the posts had rotted off and others were burned off, and in places the staples holding the wire had dropped out and the wire had been pressed down so that a steer could easily step over it; and in one other place, where the fence crossed a ravine, the wire had pulled loose from

the posts and sprung up, leaving a space large enough for a steer to walk under the wire.

The court of its own motion gave the following instructions to the jury:

"1. The plaintiff has sued the defendant for the loss of certain cattle which were put in defendant's pasture under contract made with defendant about May 5, 1904.

"2. Under said contract the defendant has agreed to employ a man who should give his entire attention to looking after the stock in said pastures and who should see that the said stock were properly salted and had access to plenty of water, and if it complied with the provisions it was not to be responsible for the loss of any of said cattle. The said contract would also require the defendant to maintain the fences as hereinafter defined.

"3. If the plaintiff has shown that he put cattle in said pasture, under said contract, for the season of 1904, and at the end of said season made demand of defendant for the return thereof, and if any of said cattle were not so returned, then it devolves upon the defendant to show and prove that its failure to return said cattle was not caused by its failure to comply with the conditions of said contract to be performed on its part, and, in such case, if it has not so proven, your verdict should be for the plaintiff on the first count of the petition.

"4. Under the said contract the defendant was required to have a man give his entire attention to looking after said stock and provide them water and salt, and also to use reasonable diligence in maintaining the fence around said pasture.

"5. Reasonable diligence to maintain the fences means that he should use reasonable diligence to discover any breaks in the fence through which the cattle might escape, and if any such breaks occurred to mend the same in a reasonable time after the discovery of such breaks or

after he should have discovered them by use of reasonable diligence.

"6.   Reasonable diligence and reasonable time, as used in these instructions, means such diligence and time as a prudent man should exercise or employ in or about his own affairs.

"7.   If you find for the plaintiff you will assess his damages at such sum as you may find, from the evidence, that would have been the reasonable value of said cattle, at the close of the season, that you find were lost if any, by reason of the failure of defendant to comply with the requirements of said contract, as herein defined, if you so find; less one dollar per head, pasture rent still due.

"8.   Although you may find that the defendant did fail to comply with any of the requirements of said contract, this would not make it liable in the case, unless you find from the evidence that the loss of the cattle was the result of, or was caused by such failure."

And refused the following asked by the defendant:

"1.   The court instructs the jury that defendant did not agree to be responsible for the loss of said cattle, provided that it gave the attention specified in said contract, to-wit:   to employ a man who should give his entire attention to looking after said stock, salting and seeing that same had access to plenty of water, and if said man did so give his entire attention to looking after the same, and provided them with plenty of salt and access to to plenty of water, you will find for the defendant.

"2.   The court instructs the jury that if the defendant employed James Cooksey to give his entire attention to looking after the cattle in its pastures; and that said Cooksey did give his entire attention to looking after the stock in said pastures, and saw that said stock was properly salted and had access to plenty of water, then said company fully complied with the terms of said contract, and are not liable for the loss of said cattle."

The jury found the issues for plaintiff and assessed his damages at four hundred and sixty-two dollars. A motion for new trial proving of no avail, defendant appealed.

BLAND, P. J. (after stating the facts).—1. Defendant demurred to plaintiff's petition. The court overruled the demurrer. Defendant did not stand on its demurrer but answered. One of the assignments of error is, that the court should have sustained the demurrer. That an answer over waives a demurrer is too well settled to require the citation of authorities.

2. Defendant insists that the evidence fails to show a demand was made on it for the missing steers. The evidence is that plaintiff was notified by Cooksey to come to Sligo for his cattle, and in response to the notice be sent his agent to receive them, and when it was discovered fourteen head were missing, McRoberts, defendant's superintendent, promised plaintiff's agent to have the cattle hunted up and to notify plaintiff when they were found. As they were never found McRoberts never gave the notice. This evidence, for all practical purposes, shows a demand for the cattle, and there was no necessity, under the circumstances, of making a formal demand to entitle plaintiff to maintain the suit.

3. Defendant's construction of the contract is, that it did not obligate itself to keep its pasture fence in a reasonably safe condition to hold the cattle, that it only undertook to provide salt and water and a man to look after the cattle. Fencing is not mentioned in the written contract, but the pasture is, and it is in the contract that plaintiff's cattle should be kept upon the twenty-seven-hundred-acre pasture. It was a matter of indifference to plaintiff whether the cattle were held in restraint on the pasture by a fence or by herders. Defendant, for a consideration, obligated itself to use reasonable care to confine the cattle to the pasture. It undertook to dis-

charge this duty by watching and keeping up its fence around the pasture and, if on account of its negligence or that of its employee, in the discharge of this duty, the cattle escaped and were lost, it is unquestionably liable, and the trial court took this view of the contract, as is shown by its instructions to the jury. We think it was clearly right and correctly refused defendant's instructions.

4. Respecting the value of the cattle, plaintiff's evidence tends to prove they were worth from thirty to thirty-five dollars per head at the date of their delivery to defendant. Defendant objected to this evidence, on the ground "that under the terms of the contract the defendant is not liable for the escape or loss of any cattle thereunder, and for the further reason the testimony does not show any grounds for the liability at this time against the defendant for the loss of said cattle." It now makes the objection, that the evidence was inadmissible for the reason the approved measure of damages in such cases is the value of the property at the time of the conversion. This ground of objection was not made on the trial, and cannot be made here for the first time. [Wibracht v. Annan, 89 Mo. App. 363; Caris v. Nimmons & Bennett, 92 Mo. App. 66; State v. Goddard, 162 Mo. 198, 62 S. W. 697; Kansas City v. Marsh Oil Co., 140 Mo. 458, 41 S. W. 943; Gayle v. Missouri Car & Foundry Co., 177 Mo. 427, 76 S. W. 987.]

Discovering no reversible error in the record, the judgment is affirmed. All concur.