JENNIE E. OSTRANDER, Appellant, v. JOSEPH MESSMER, C. D. KLEMME and FRED MESSMER, JR.

Division One, November 15, 1926.

1. **NEW TRIAL: On Grounds other than Those Assigned.** The motion for a new trial may be sustained on appeal on grounds other than those given by the trial court if such grounds were embraced in the motion.

2. **SALE: Stock of Corporation: Contract for Distribution: Statute of Frauds.** An agreement to form a corporation and to distribute its stock in definite amounts, in proportion to patents or money contributed, is not an agreement to sell stock; and a note, given by plaintiff and her husband to defendants, who were to be the other stockholders, which represented the amount due from them for money advanced by defendants, or was the difference between the par value of the stock to be issued to them and the agreed value of their patents taken as a payment for the stock, if it could be regarded as a sale of stock, was supported by partial payment, and in either case the Statute of Frauds does not apply to the transaction.

3. **CONTRACT: Alteration: Subsequent Modification.** Whether there was an alteration in the original contract is not the controlling question in the case, where plaintiff bases her right to recover, and defendants base their defense, upon a subsequent modification of said contract, and differ only at to the proper interpretation of the modified agreement.

4. **INSTRUCTION: Not According to Pleadings or Evidence.** An instruction which authorizes a recovery upon conditions which are not according to the pleadings or the evidence should not be given. The court should not by an instruction hypothesize plaintiff's right to recover and defendant's right to a verdict upon conditions which are outside both the pleadings and the evidence produced.

5. **NEW TRIAL: Excessive Verdict: Judicial Discretion: Remittitur.** The burden rests upon the appealing plaintiff to show that the granting of a new trial upon the ground assigned by the trial court was an unwarranted or an abusive exercise of its discretion; and where the new trial was granted on the ground that "the verdict is so excessive that the jury must have entirely misapplied the evidence or been influenced by passion and prejudice," and the evidence fails to support the verdict returned clearly enough to make out an abuse of discretion, the appellate court cannot convict the trial court of error for failure to order a **remittitur,** but must sustain the order granting a new trial.

---

Corpus Juris-Cyc. References: **Appeal and Error,** 3 C. J., Section 337, p. 507, n. 60; Section 618, p. 718, n. 50; 4 C. J., Section 2813, p. 830, n. 45; Section 3139, p. 1139, n. 78. **Frauds, Statute of,** 27 C. J., Section 240, p. 232, n. 89; Section 296, p. 252, n. 40. **New Trial,** 29 Cyc., p. 839, n. 91; p. 841, n. 92.

Appeal from Circuit Court of City of St. Louis.—*Hon. H. A. Hamilton,* Judge.

AFFIRMED.

*Abbott, Fauntleroy, Cullen & Edwards* and *Taylor R. Young* for appellant.

(1) In determining whether damages are excessive previous verdicts in the same case may be taken into consideration. Loker v. Railroad Co., 94 Mo. App. 481; Baker v. Independence, 93 Mo. App. 165. (2) Where corporate stock has no market value resort may be had to sources other than the market value to determine its actual value, and the value of the shares must be found by an exami-

nation of the affairs of the company. 1 Sedgwick on Damages (9 Ed.) p. 520; 14 C. J. 719; Hewitt v. Steele, 118 Mo. 674; Deck v. Feld, 38 Mo. App. 674; 6 Fletcher's Cyclopedia Corporations, p. 6609. (3) Where there has never been any open market for the stock of a corporation, the amount of damages is for the jury. Spencer v. Hardin, 149 N. Y. App. Div. 667, 134 N. Y. Supp. 373. (4) A new trial should not be granted on the ground that the damages are excessive where the evidence is conflicting or where a determination of the question whether the verdict is excessive depends upon the credit given by the jury to the evidence. Hitt v. Kansas City, 110 Mo. App. 713; Grady v. Transit Co., 102 Mo. App. 212; Loftus v. Kansas City, 156 Mo. App. 683. (5) The proper method of curing an excessive verdict is by *remittitur*. Phillips v. Evans, 64 Mo. 17; Barnes v. Knott, 224 S. W. 1033; Jonesboro Railroad Co. v. United Iron Works Co., 117 Mo. App. 153.

*Koerner, Fahey & Young* for respondents.

(1) The legal conclusion announced on the first appeal of this case by the Court of Appeals is the law of this case below or above on subsequent appeal. Mangold v. Bacon, 237 Mo. 512. (2) The Court of Appeals has held that the particular alteration of the contract in controversy releases the defendants in this case and voids said agreement. Ostrander v. Messmer, 223 S. W. 438; Koons v Car Co., 203 Mo. 227; Carson v. Woods, 177 S. W. 623; Barnhart v. Little, 185 S. W. 174; Kelly v. Tuhey, 143 Mo. 422. (3) Plaintiff seeks to recover upon this written contract (which was voided by the alteration above referred to) and a parol modification. The original writing being rendered absolutely void and unenforceable by the alteration cannot constitute part of any contract partially in writing and partially in parol. An attempted modification or amendment of an invalid contract is not a contract at all. Cases supra. (4) The particular contract, so far as this plaintiff is concerned, and as originally entered into, is a contract for the delivery of stock, which is to be subscribed by persons other than the plaintiff, and when said corporation is formed and the stock issued to said subscribers is, by said subscribers, to be delivered to plaintiff under a contract of sale. Such a contract is for the sale of goods, wares and merchandise under the Statute of Fraud, and must be in writing, and any modification of same must also be in writing. Price v. Hart, 29 Mo. 171; Houston v. Mahoney, 219 S. W. 128; Hewson v. Peterman Mfg. Co., 136 Pac. (Wash.) 1158; Hightower v. Ansley, 126 Ga. 8; Warren v. Mayer, 161 Mo. 112; Eastern States Refrigerating Co. v. Teasdale Co., 211 S. W. 693; Devor v. Devor, 138 Mo. 181. (5) The court erred in permitting the jury to return a joint

verdict against the individual defendant. (6) The court erred in refusing to give Instruction L offered by the defendants.

LINDSAY, C.—The plaintiff had a verdict for $10,000, which the trial court set aside, specifying as the reason therefor that "the verdict is so excessive, that the jury must have entirely misapplied the evidence or been influenced by bias and prejudice." This is the second appeal in the cause. Upon the first trial the plaintiff had a verdict and judgment for $7,500, which was reversed by the St. Louis Court of Appeals and the cause remanded. [223 S. W. 438.] The suit is one for damages for alleged breach, by defendants, of a contract to issue and deliver to plaintiff ten shares of stock in the Continental Brass & Foundry Company.

The petition upon which the first trial was had pleaded solely a written contract, and did not plead any modification thereof. The petition upon the second trial declared upon a contract, partly in writing and partly by parol, and also set up a modification of the contract by parol agreement, made after the execution of the written portion. Whether the entire contract, as made by the parties at the time the writing was signed, was expressed in that writing, and what were the terms if a modification of it was subsequently made, if any, were contested issues of fact.

The written instrument is set forth in the opinion of the Court of Appeals and will not be set out in full here. Preliminary to a statement of its essential provisions, a brief statement of the events leading up to its execution is necessary.

The written instrument in question was dated December 28, 1913. Prior to that time Louis F. Ostrander, the husband of plaintiff, had controlled the Continental Radiator & Foundry Company. That company went into bankruptcy. It owned trademarks and patents for certain articles of manufacture. The articles manufactured under those patents were made by the Messmer Foundry Company, a company controlled by defendants Joseph Messmer and Ferd Messmer, and by the Eagle Foundry Company, a company controlled by defendant G. D. Klemme. At the time of its bankruptcy the Continental Radiator & Foundry Company was indebted to the Messmer Foundry Company and the Eagle Foundry Company in the aggregate amount of $2,200. The patents owned by the Continental Radiator & Foundry Company were to be sold by the trustee in bankruptcy. Louis F. Ostrander and the plaintiff desired to purchase these patents at the sale in bankruptcy, and engaged Taylor R. Young as their attorney in that behalf. The defendants, in behalf of their respective companies, wished to continue to manufacture the articles covered by the patents. An understanding was reached by the defendants and Young, as attorney for plaintiff and her husband, that Young

should purchase the patents, and that having done so a corporation should be organized to own the patents and to act as a selling agency to sell the manufactured articles. Young bought the patents at the sale, at the price of $1350, which sum at the time was furnished by the Citizen's Trust Company. Later the defendants Ferd Messmer and G. D. Klemme took up that indebtedness, and Young, as security therefor, or in pursuance of the arrangement of the parties, assigned the patents to the defendants. The plaintiff and her husband had agreed with Young that they would assign to him shares in the corporation to be formed, to be taken by him as his fee. These matters preceded the time of the signing of the contract of December 28, 1913. That instrument began by reciting that "the following outlines are those agreed upon between" the named parties, "covering all acts and policies agreed upon." The writing then provided that articles for the incorporation of the Continental Brass Foundry Company were to be made by the three defendants and Louis F. Ostrander, as incorporators; that the capital stock was to consist of patents, patterns and trademarks to the value of $1,850, and cash $650, a total of $2,500, of capital stock, divided into twenty-five shares of the par value of $100 each, to be subscribed for, eight shares by each of the three defendants, and one by Louis F. Ostrander; that said four subscribers were to be directors, and that the three defendants were to be the officers of the company; that after the incorporation, the shares were to be "distributed:" to defendant Klemme, seven shares; to Joseph Messmer, four shares; to Ferd Messmer, three shares; to plaintiff ten shares, and to Louis F. Ostrander, one share. Immediately after statement of the foregoing matters, there was in the said writing the following provision: "In consideration for the eleven shares of stock issued to Jennie Ostrander and Louis F. Ostrander jointly, the latter are to furnish to Ferd Messmer and G. D. Klemme, their joint note for $880." It is proper at this place to observe that an essential claim of plaintiff and of Louis F. Ostrander was, that the note mentioned was to be paid with dividends upon their shares in the company to be incorporated, and also that an important question arose in the case upon the fact that after the signing of the writing in quadruplicate, by the parties, Louis F. Ostrander wrote with pencil into the copy kept by him and plaintiff, after the figures $880, in the sentence above quoted, the words, "to be paid for with dividends from their stock." The contention of defendants was, and is, that thereby there was an unauthorized alteration and the contract was made void.

The writing further provided that Louis F. Ostrander should be employed as sales manager of the company to be incorporated; that dividends of such company should first be applied to any indebtedness of the Continental Radiator & Foundry Company to the Messmer

315 Mo.—74.

Foundry Company and to Eagle Foundry Company, remaining after the discharge in bankruptcy of the Continental Radiator & Foundry Company. It contained provisions regulating the policy of the projected company, in making sales, and as to prices and commissions, and it contained a provision that each of the stockholders, for their mutual benefit, should assign, without further consideration, any and all interest in the patents and trademarks concerning various named articles of manufacture or any improvements thereof which he had or might acquire. The final paragraph of the writing in question was an agreement that each of the stockholders mentioned would give to the others the prior right to purchase his shares at a price known as the book value, and would not sell or offer his shares to other than a stockholder until the other stockholders should decline to purchase such shares.

The amended petition alleged the making of the contract on December 28, 1913, between defendants and plaintiff and her husband; and that the said contract was entered into partly in writing and partly by parol, and pleaded the terms of the contract, as to the agreement to organize the company, and after incorporation to distribute the shares as above mentioned; that the consideration moving from plaintiff and Louis F. Ostrander to defendants was the valuable patent rights and business good-will owned by plaintiff and her husband, and agreed to be, and which were turned over to said corporation. It further pleads that by the contract, partly in writing and partly by parol, plaintiff and her husband were to make the defendants Klemme and Ferd Messmer their "promissory note" in the sum of $880, to be paid with dividends from the eleven shares of stock to be issued to plaintiff and Louis F. Ostrander, and alleged that while that portion of the contract reduced to writing omits the statement that the $880 note was to be paid with such dividends, yet, that contemporaneously with the execution of the writing it was so orally agreed as part of the entire contract.

The petition then pleads the organization of the company, and that defendants did, in part, carry out their contract, by issuing in plaintiff's name ten shares of the capital stock, but never delivered the same to her. It next alleges that thereafter the contract was orally modified by the parties, by an agreement that the note for $880 should be for the sum of $924, to be paid with dividends from the stock to be issued to plaintiff and her husband. It alleges the tendering of said note for $924, in accordance with the modified agreement, demand upon defendants, as the sole officers and directors of the company and owners of its capital stock, for the delivery of said ten shares of stock, and defendants' refusal to deliver.

The answer, after a general denial, stated that on December 28, 1913, defendants entered into a contract in writing with plaintiff and

her husband, providing for the incorporation of the company and for distribution of the capital stock; alleged that the written contract represented entirely all the agreements made between plaintiff and defendants, and that no part of said agreement was in parol; that the note for $880 was to be an unconditional promissory note, and that after the making of said contract plaintiff and her husband agreed that all the dividends paid on their stock should be paid to defendants on said note. The answer admits that there was a subsequent agreement made, under which the note to be given should be for $924, but denies there was any agreement that the note to be given was to be paid with dividends. The answer alleges that after the execution of the written contract mentioned, the plaintiff or her agent, fraudulently and without the knowledge and consent of defendants, added the words, "to be paid with dividends from their stock;" and that by reason of the alteration, the contract was rendered void. The answer also pleaded a breach of the contract by plaintiffs, alleging that plaintiff, in writing, had assigned three shares of the capital stock to Taylor R. Young, without notice to defendants, and without giving them the prior right to purchase said shares as provided in said contract, and alleged that plaintiff and her husband refused to give the note provided for in the contract, but insisted upon giving a note which was to be paid for with dividends alone.

The reply was a general denial.

The evidence for plaintiffs upon the second trial was to the effect that the act of writing in the words, done with a lead pencil, was for the purpose of making a memorandum on the paper for the convenience of Louis F. Ostrander in calling attention of defendants to the omission, and in requesting that the contract be so corrected. The written instrument, omitting the penciled words, was admitted in evidence over the objection of defendants, as was the testimony as to the circumstances or reason why the words were written, and that there was an oral agreement not stated in the writing. The testimony of Louis F. Ostrander was that soon after the signing of the various copies of the contract and their delivery, he and the plaintiff noticed the contract did not contain the provision for payment of the note with dividends, and upon suggestion of the plaintiff that he should call defendants' attention to it, and that he had "better jot that down there," he did write in the words, as a memorandum, and that a few days after the signing of the contract he called the attention of defendants to the omission in the contract; that defendants Ferd Messmer and G. D. Klemme said whatever Joe Messmer did would be all right; that he took the paper to Joe Messmer and called his attention to the omission; showed him the paper and pointed out the memorandum and asked that the words be inserted, or, that the con-

tract be rewritten, to which Joe Messmer said: "I have written and rewritten that thing as many times as I am going to, and besides that you can put it in the note. The terms will speak for themselves on the note." Joe Messmer further said that it wasn't necessary to rewrite the contract. The witness says he replied to Messmer, saying: "I never thought of that;" and took away with him the copy of the contract leaving therein the words written with pencil. It appears in the record that the contract with the penciled words was later turned over to the attorney for plaintiff and Louis F. Ostrander, and that the original petition declared upon the contract as including the penciled words.

In a deposition taken soon after the suit was filed, Louis F. Ostrander testified that the alteration was in all of the copies of the contract before they were signed. However, it is stated in the opinion of the Court of Appeals, that the first trial was had upon a petition which declared upon the contract without the penciled words. This was the first amended petition. On the first and second trials, the testimony of Louis F. Ostrander was that he was mistaken in saying that the penciled words were in the copies before they were signed. Upon the second trial, as in the first, he said that in so testifying in the deposition he had confused the contract with the note, and that he had forgotten he had gone to Joe Messmer and called his attention to the memorandum. Joe Messmer's testimony was that he did not know the words had been written into the contract until after he was served with process in the suit. His testimony is a denial that there was any agreement that the note was to be paid with dividends.

Ferd Messmer, testifying in the second trial, admitted he had testified upon the first trial that the note to be given by the Ostranders was to be paid with dividends upon their stock. The contention of defendants upon the second trial was that the stock to be issued to the Ostranders was to be held in the way of security for the payment of the note, and that any dividends upon their shares were to be applied upon the note. The testimony for plaintiff did not tend to show the agreement as to payment with dividends was one first made as applicable to the $924 note, but that it was merely an application of the original agreement to that note in its increased amount.

Articles for the incorporation of the company were filed January 13, 1913, and the certificate of incorporation was issued on January 14, 1913. The testimony for plaintiff was that they tendered a note for $880, but were advised that the note must be for $924. The explanation for this was that the Secretary of State refused to accept as of the value of $100 a certain patent applied for, and that in lieu thereof the further sum of $100 in cash was required. This made an additional payment necessary of four dollars per share, and upon

the eleven shares of plaintiffs the sum of $44, which made it necessary that the note to be given by them should be for $924. The testimony for plaintiff was that the note for $924 was tendered several times, and that it contained the provision that it was to be paid with dividends; that acceptance of the note by defendants and delivery of the stock was delayed under various excuses, as that defendants were at the time in a hurry, and that later it could be attended to; that the affair went on in that manner for several months. Pending that, Louis F. Ostrander had been acting as sales manager for the company. He was, after several months, discharged by defendants, and they, refusing to accept the note and deliver the stock, the suit was filed. The petition upon the second trial was framed, and the case was tried by the plaintiffs, upon the theory that the contract was partly in writing and partly by parol, and that the words written into the copy of plaintiff did not constitute an alteration and that the agreement to give the note for $924 was a modification of the original agreement. The holding of the Court of Appeals under the testimony at the first trial was that, conceding the words were written in good faith to make the contract conform to the agreement of the parties, that did not change the rule making the act an alteration which would.release the defendants. [Koons v. St. Louis Car Company, 203 Mo. 227, and other cases cited in support of that ruling.] The Court of Appeals further held that while the plaintiff's evidence in the first trial tended to show either that the agreement originally made provided that the note should be paid with dividends, which provision was omitted in the writing, or a modification of the agreement by which the note should so be paid, nevertheless, since the petition had not declared upon any such theory, there could be no recovery under that petition. The defendants on the second trial offered a peremptory instruction at the close of plaintiff's case, and again at the close of the whole case, which was refused.

The brief for plaintiff is devoted solely to an effort to show that the court erred in granting a new trial upon the ground specified by the court. While combating that contention, the brief for defendants is devoted mainly to the contention that plaintiff under her petition and the evidence was not entitled to go to the jury, and errors are also assigned in the giving and refusal of instructions.

Counsel for plaintiff have filed no brief in reply, and have ignored any question of the right of defendants to have the action of the trial court sustained upon the ground that plaintiff, as a matter of law, was not entitled to recover under the pleadings and the evidence, or that the motion for a new trial was sustainable on grounds other than that specified. Defendants' motion for a new trial presented that issue, and under the former rulings of this court it is one for determination here on appeal. [Morrell v. Lawrence, 203 Mo. 370;

Scott v. Cowen, 274 Mo. 398; Haven v. Railway, 155 Mo. 216; Emmons v. Quade, 176 Mo. 29; Chandler v. Gloyd, 217 Mo. 394.]

The contention of counsel for defendants is that the act of Louis F. Ostrander was an alteration of the instrument, which avoided it and released the defendants; that the Court of Appeals so ruled, and its ruling thereon is the law of the case upon the second trial and upon this appeal. The further contention is that plaintiff seeks recovery upon a written contract thus shown to be void, and upon a parol modification thereof, and that since the original writing had been rendered void, it could not constitute a part of a contract partially in writing and partially in parol, and therefore the attempted modification of such invalid contract is itself a nullity, and is no contract at all, and it is urged there was no new consideration for the modification. Their argument has a twofold aspect. The first is, as just stated, that there is no contract at all, for the reason that what was attempted was a modification of an invalid instrument, and not a new agreement created upon a new consideration. The other form of the argument is that since the instrument was invalid, the binding force, if any at all, must be in the subsequent agreement, and that since the subsequent agreement is not in writing, it is of no effect, because, the subject of the contract is one within the provisions of the Statute of Frauds. Upon that phase of the question it is urged that the contract is one for the sale of shares of stock in a corporation thereafter to be organized, and therefore it is as if it were a contract for the sale of goods, wares and merchandise, and is within the firmly established rule that the Statute of Frauds applies to the sale of corporate stock. [Houston v. Mahoney, 219 S. W. 128, and other cases there cited.] We hold, however, that the contract which these parties made was not one for the sale of corporate stock. The agreement was that the capital stock was to be subscribed by the defendants and Louis F. Ostrander. The capital stock in part was to consist of the patents, trademarks and other valuable rights, in which the plaintiff as well as others had an interest, and in addition to that property, a certain sum of money to be paid. The money was advanced by the defendants. The parties subscribing to the capital stock, and who directly made the application for incorporation, were not agreeing that they would sell shares to the plaintiff; nor was the plaintiff, who signed the contract although not named in the body of it, agreeing to buy shares. Under the agreement the plaintiff was to contribute and did contribute to the capital of the company to be incorporated. Her interest in the property went in with the interests of the others in the same property.

The admission was made by defendants in open court, that originally there was a valid contract with a consideration, and that the consideration was received by the defendants. The agreement was that

when the incorporation should be effected, the shares were to be "distributed" to the parties named in the agreement, in proportions fixed by the agreement. The Ostranders being without ready money, the defendants advanced then, and had theretofore advanced the money, necessary for buying in the patents, and completing the incorporation; and the note provided to be given by the plaintiff and Louis F. Ostrander, represented the amount due from them to the defendants for moneys advanced; or was the difference between the par value of the shares to be issued to plaintiffs and the agreed value of their property taken as a payment upon the capital stock. If the contract could be regarded as one for the sale of shares of stock, as defendants urge, they received a partial payment thereon and the statute would not apply.

In considering the other phase of the argument for defendants, we are somewhat uncertain whether the court was of the view that as a matter of law there was an alteration of the contract, or took the view that as a matter of law there was not an alteration, or that in view of the conduct of the parties it was immaterial. The pleadings made that an issue, and it is plain that counsel for plaintiff considered it to be an issue, and submissible to the jury. This is shown by Instruction E asked by plaintiff and refused by the court. This instruction would have told the jury that if they found the matter in pencil was written in the contract by plaintiff's agent as a memorandum for the purpose of refreshing his recollection, and without any intent to alter or change the contract, but with the intention of using the part written as a memorandum to submit to the defendants for their approval or rejection, and if they further found that in writing the part interlined in said contract, there was no intent on the part of plaintiff or her agent to change the wording without the consent and knowledge of the other parties, then they should find that there was no alteration of said contract, and, if they so found, they could not find against the plaintiff on that defense. In the situation here on appeal, plaintiff is not complaining of the refusal of that instruction. The court, however, also refused defendants' Instruction L, which would have told the jury that the alteration of the contract sued upon invalidated said contract and also any subsequent verbal understanding or agreement relating thereto, and that plaintiff was not entitled to recover either under said altered contract or any verbal agreement in connection therewith. This was the only instruction asked by defendants on the subject of alteration, and it assumed there was an alteration.

It cannot be assumed that the court held as a matter of law there was no alteration in view of the conflicting testimony. Louis F. Ostrander testified to facts hypothesized in plaintiff's Instruction E, but he also testified that in his deposition given soon after the original

suit was brought, he had testified that the words in question were in all the copies of the contract when they were signed, and stated that in giving his deposition he had forgotten having had a conversation with Joe Messmer in which he showed him the memorandum in question, and called his attention to the correction he wanted made. There was also the fact that in the original petition the contract was declared upon in its altered form, and Joe Messmer's testimony that the first he knew of the writing in of the words was after he was served in the suit. Nevertheless, the court gave Instruction 2 asked by plaintiff, which is as follows: "The court instructs the jury that it is admitted by defendants that, after the written contract bearing date of December 28, 1913, was signed by the parties, it was orally agreed between the plaintiff and defendants that the note which the plaintiff and her husband should give to the defendants should be changed from $880 to $924; and if you believe and find from the evidence that at any time after the written contract, dated December 28, 1913, was signed, it was orally agreed between the plaintiff and the defendants that the note for $924 should be paid out of the earnings on the shares of stock which the Ostranders should receive, then, if you so find the facts to be, you are instructed that the fact that the note for $924 tendered by the plaintiff and her husband contained a recital that it should be paid out of any earnings on said stock constitutes no defense to this action." The court also gave of its own motion its Instruction 1, which is as follows: "The court instructs the jury that if you believe and find from the evidence that the plaintiff and the defendants entered into the written contract dated December 28, 1913, introduced in evidence, and that thereafter it was mutually agreed by the plaintiff and defendants that said written agreement dated December 28, 1913, be modified so that the provision therein contained requiring plaintiff to give a note for $880 to the defendants should be so altered and amended as to require plaintiff to give to the defendants a promissory note for $924, and that it was further agreed by plaintiff and defendants that said note for $924 should be payable only out of dividends declared upon the ten shares of stock to be issued to the plaintiff as set forth in the written contract above mentioned; and if you further believe and find from the evidence that after it was agreed that said written contract should be altered as hereinabove stated, if you find it was so agreed, that the plaintiff delivered to the defendants a note for $924 wherein it was provided that the same should be paid only out of dividends to be declared upon the ten shares of stock aforesaid, and that the plaintiff demanded that said ten shares of stock be issued to her, and if you further believe and find from the evidence that the defendants neglected, failed or refused to issue said ten shares of stock to plaintiff, then you will find your verdict in favor of the plaintiff, unless

you believe and find from the evidence that at the time said note for $924 was tendered to the defendants the plaintiff had, by written agreement, contracted to assign to Taylor R. Young three shares of stock in the Continental Brass & Foundry Company out of the ten shares to be issued to her, and that the agreement for such assignment, if any, had not been canceled and annulled prior to the date when such note for $924, if any, was tendered to defendants; but if you believe and find from the evidence that said agreement for the assignment of three shares of said stock to Taylor R. Young had been executed by plaintiff, and the same was uncanceled and in full force and effect at the time said note for $924 was tendered, if you so find, then your verdict will be for the defendants.''

The refusal of defendants' Instruction L above mentioned, and the giving of plaintiff's Instruction 2 and of Instruction 1 of the court's own motion, seem to indicate the view of the court that the written contract as such still existed, despite, or irrespective of any question of alteration, and could be modified or was modified by subsequent oral agreement, regardless of whether at the time such subsequent agreement was made defendants had knowledge of any alteration, or attempted alteration of the instrument. The right of plaintiff to recover under Instruction 1 given of the court's own motion clearly rested upon the finding that there was a subsequent agreement modifying the written contract, and that, without regard to whether there was any alteration, or, if one, whether defendants had agreed to the modification with knowledge of the alteration. At this point, however, we remark that after much consideration of this case we do not regard the question whether there was an alteration as a controlling question in the case. Both parties claim there was a modification of the contract, in that the note to be given was to be increased to $924. The claim of plaintiff, under the testimony for her, is, that an agreement already theretofore made orally for the payment of the note with dividends, was to govern in the payment of the note for $924. Defendants, denying there was ever such an agreement, claim that there was an agreement, made after the writing was signed, that whatever dividends were declared upon the stock issued to plaintiff and her husband, when and as declared, were to be paid to defendants as payments upon said note. The parties broke upon that issue. The terms of the writing signed December 28, 1913, and the conduct of the parties tend to show that it was not a wholly complete instrument, nor so regarded. The writing was characterized as ''outlining the acts and policies of the parties.'' There was in it no provision as to when the note was to become due, or what rate of interest it should bear. In the course of the trial the plaintiff introduced in evidence an unsigned writing presented by Joseph Messmer to plaintiff and Louis F. Ostrander, for their

signatures.  It purported to be a statement of what had been done by all the parties and all the companies mentioned, in accordance with the "memorandum of agreement" entered into on December 28, 1913. This unsigned writing recited that it was made on March —, 1914. Louis F. Ostrander testified it was presented to him about March 19, 1915, or about the time he was discharged by defendants from the service of the company.  This writing contained a recital that the things provided to be done under the agreement of December 28, 1913, had been done, and then proceeded to recite the fact that plaintiff and her husband were indebted to defendants upon their note for $924, designated as a note secured by collateral agreement on eleven shares of stock, and which note was due one year after its date, and bore six per cent interest; and then recited that the parties made a further agreement, which was set out, and which in substance would have provided for payment of all dividends upon the shares of plaintiff and her husband upon said note, and a cancellation of the note and delivery of the shares when the note was paid, but containing also various other provisions as to extension of the note, and right of defendants to foreclose upon the stock, dependent also upon continuance of Louis F. Ostrander in the service of the company and prescribing the conditions of that service.  This writing plaintiff and her husband refused to sign.  It was read in evidence without objection by defendants.

If the jury accepted the evidence for plaintiff as true, they could find that defendants with knowledge of what Louis F. Ostrander had interlined, had acquiesced therein, and agreed that the note required by the contract should so provide, and agreed that the note in the increased amount demanded by defendants, and agreed to be given by plaintiff and her husband, should so provide.  But the case was not presented upon that theory.

Recurring to Instruction 1 given by the court of its own motion, it is clear the instruction authorizes a recovery upon conditions not in accordance with the pleadings or the evidence.  It will be noted that Instruction 2 given for plaintiff proceeded upon the hypothesis of an agreement between plaintiff and defendants that plaintiff and her husband were to give a note to defendants, and that the oral agreement concerning the payment of the note, both the note for $880 and the note for $924, was, that it was to be paid out of the earnings on the shares of stock which both plaintiff and her husband were to receive.  On the other hand, Instruction 1 given of the court's own motion, proceeded upon the. theory that by the terms of the modified agreement plaintiff herself was to give the defendants a promissory note, and that the agreement between plaintiffs and defendants was that said note for $924 should be payable out of the dividends declared only on the ten shares of stock to be issued to the

plaintiff. The contract pleaded and as shown required the note to be given by the plaintiff and her husband, and be paid with dividends upon the shares of both, and there was no testimony of any agreement whereby plaintiff was to give her own note for the $924, and that such note should be paid only with dividends upon the ten shares of stock to be issued to her, and it is not claimed there was such an agreement. It may be also mentioned that the reference in said instruction to the assignment of shares to Taylor R. Young, is not made an issue here. The evidence in the record seems to show that through money paid by plaintiff herself, and money advanced by defendants or some of them, the attorney was paid and the assignment of shares that had been made to him had been canceled.

Counsel for defendants also urge in their brief that under the pleadings and the evidence, the jury could not return a joint verdict against all the defendants for the value of the ten shares of stock, for the reason that by the agreement defendant Klemme would have been required to transfer one of his eight shares, Ferd Messmer five of his eight shares, and Joe Messmer four of his eight shares. Thereupon it is argued that if Klemme had breached the contract at all, it was by reason of his failure to transfer one share, and that his entire responsibility under the contract is limited to the value of one share of stock. Defendants did not raise that question in the trial court, and so far as we can discover, it is first raised here upon this appeal.

Defendants made joint answer, and joint defense, and tried their case below upon the theory that under the contract, if liable at all, they were liable jointly and severally, and since counsel cite no authority for the contention that under this contract defendants were not jointly and severally liable, and tried the case on the theory all were liable, if at all, we confine ourselves here to the theory upon which they based their defense upon the trial.

The testimony shows that the business of the Continental Brass & Foundry Company was very profitable. Defendant Ferd Messmer, who kept the books of the company, was called as a witness by the plaintiffs, and he testified that the net earnings for the nine years of its existence down to the time of the trial were as follows: For the year 1914, $1011.83; for 1915, $3,295.63; for 1916, $2,836.64; for 1917, $2,032.28; for 1918, $1205; for 1919, $427.94; for 1920, $3,371.-12; for 1921, $1,624.76, and for 1922 there was a loss of $684. Counsel for defendants stress the fact that for the first seven years the annual average of the earnings was $2,032.10, or an average of earnings of eighty per cent upon the capital stock. The total of earnings, for the nine years as above set out, was $15,121.20, or an annual average of $1,680.13, or an average of about sixty-five per cent upon the capital stock of the $2,500. Upon the question of the value of

the stock, plaintiff produced as a witness Albert G. Davis, who testified that he had been in the bond business in St. Louis since 1908, and was familiar with the reasonable value of stocks and bonds in St. Louis since that time.   His estimate of the value of the stock was made in answer to a hypothetical question based upon the average earnings for seven years.   Asked to state in round figures what the stock would have been worth on the 17th day of November, 1917, he said it would be worth from ten to fifteen times the net earnings and said that would make it between $1,000 and $1,500 a share. He said it was a very indefinite thing to arrive at a value under the circumstances.   In stating the hypothetical question, which was done by the court, it was included in the hypothesis stated that the company had the benefit of the services of a president, who had general management of its affairs and served without compensation, and also that the secretary of the company, who kept its books and records, served without compensation.   Further included or endeavored to be included in the question was a consideration of the fact that dividends or earnings upon the entire $2,500 of capital stock must be applied to the extent of $2,200 in payment of the old indebtedness of the bankrupt Continental Radiator & Foundry Company, before any of the stockholders could share in the earnings of the new company, the shares in the hands of the stockholders under the agreement having been encumbered with a lien for the payment of said indebtedness out of earnings, before the stockholders could participate in such earnings.

The time stated as that for determination of value, November 17, 1917, appears to have been the time of the filing of the original suit. Chas. W. Moore, investment broker, called by defendant, estimated that the company was worth, as an investment for an outsider to buy, somewhere between $8,000 and $10,000.   John F. Betts, a stock-and-bond broker, a witness called by defendant, testified that the stock was worth about $200 per share.   His testimony as stated in the record seems to have been upon consideration of the average earnings per year of $2,032 upon the whole of the capital stock, and that the payment of dividends was subject to the obligation of paying the $2,200 of indebtedness mentioned.   His estimate of value was given as of April 1, 1915.   As another illustration, we may consider the total earnings for nine years as above found, $15,121.20.   The testimony was that there remained unpaid of the old indebtedness, which was a lien upon the dividends, the sum of $2,000.   Taking that sum off, there remained net earnings to the stockholders for said period of nine years in the sum of $13,121.20.   The ten shares claimed by plaintiff constituted two-fifths of the capital stock.   Two-fifths of the sum last mentioned is $5,248.48, which would be the amount of earnings apportioned to the ten shares claimed by the plaintiff dur-

ing the nine years. The amount of the unpaid note, however, would have to be considered and taken out of the sum mentioned.

The trial court found that the verdict was so excessive that the jury must have misapplied the evidence, or been influenced by bias and prejudice. The burden rests upon the plaintiff to show that the granting of a new trial upon the ground assigned by the trial court was an unwarranted or abusive exercise of the discretion vested in that court; and, in the absence of such a showing this court will sustain the action of the trial court. [McCloskey v. Pulitzer Publishing Company, 163 Mo. 22; Morrell v. Lawrence, 203 Mo. 363; Devine v. City of St. Louis, 257 Mo. 470.] The finding of the trial court is to be taken as true upon plaintiff's appeal, unless the evidence shows the contrary clearly enough to make out an abuse of discretion and upon such an appeal we cannot enter a *remittitur*, or as counsel seem to contend, convict the trial court of error for failure to order a *remittitur*. [Gaty v. United Railways Co., 286 Mo. 503; Grzeskoviak v. Union Electric L. & P. Co., 299 Mo. 116.] We are unable to see from the evidence of this record, that the ruling of the trial court in granting a new trial upon the grounds specified was guilty of an abuse of discretion.

It follows that the order granting a new trial must be affirmed. *Seddon, C.,* concurs.

PER CURIAM:—The foregoing opinion, by LINDSAY, C., is adopted as the opinion of the court. All of the judges concur, except *Graves, J.,* absent.