EARL MANUS, RESPONDENT, v. KANSAS CITY DISTRIBUTING CORPORATION, APPELLANT.—74 S. W. (2d) 506.

Springfield Court of Appeals. August 24, 1934.

906

*Grover C. James* and *J. D. James* for appellant.

*Waldren & Andrews* and *S. W. Bates* for respondent.

ALLEN, P. J.—The evidence in this case is, that Harry Byrd, about September, 1930, orally contracted with appellant to travel and sell radios in a territory including Southern Missouri, a part of Southern Kansas and Northern Arkansas. Byrd was to pay all his traveling expenses and receive five per cent commission on the gross sales. As a matter of accommodation, appellant advanced to him a weekly drawing account, for which Byrd made settlement once a month. If the commission amounted to more than $50 a week Byrd was to receive the amount over, and if under $50 a week the difference was to be charged back to Byrd.

Under the contract Byrd was to furnish his own car, pay for all gas and oil and repairs and also pay all his other traveling expenses. He testified that the brakes on his car were sensitive and that if he applied them with very much force the right front brake took hold first, or heavier than the others, which tended to pull the car to the right. He, personally, never had any accidents, because of his experience with and knowledge of the use of the car.

Mr. Evans, the general manager of the defendant company, while in Joplin on one occasion, and while his car was in the shop, borrowed Byrd's car for a short trip. When he returned he inquired of Byrd what was the matter with his brakes, and told him that the car almost threw him through the windshield. This conversation was had about two weeks before the accident in suit.

Byrd and his wife resided in Joplin, Missouri, at an apartment house, in which also resided respondent, Manus, and his wife.

On Saturday afternoon, about February 22, 1931, Byrd left Kansas City, the place of business of defendant, appellant, to go to Joplin. He was driving his car, a Chevrolet. He testified that he made the trip for two reasons, first: That he wished to visit with his wife,

and second, that he wanted to interest respondent in buying from him and handling at his employer's store a vacuum cleaner. Respondent was employed at Newman's Department Store, at Joplin.

Byrd arrived at Joplin about nine o'clock that evening. He communicated with respondent, Manus, and suggested a conference with him, on the subject of the vacuum cleaner. Byrd stated that it was not convenient or practicable, on account of the close proximity of other people and the noise in the apartment, to discuss the matter of the vacuum cleaner with Manus, while in the apartment, and suggested that Mr. and Mrs. Manus and he and Mrs. Byrd take a drive, during which they could better discuss the matter. Later in the evening the two couples, in Byrd's car, drove to a road house in or near Pittsburg, Kansas, where they had lunch and some time later in the evening Byrd went alone to another place close by and obtained some liquor. After he returned to the road house and some time between twelve o'clock midnight and one o'clock in the morning they started back to Joplin. It was raining and the pavement was wet. Byrd asked Manus, the respondent, to drive, giving as his reason that he was tired and that he wanted to visit with Mrs. Byrd on the way back. Manus and his wife took the front seat and leaving the road house Manus was driving. Some five or six miles east of Pittsburg, at a curve in the road Manus suddenly applied the brakes, with the result that the car veered to the right and overturned, injuring Manus, respondent, for which injuries this suit was brought.

Byrd was at first made a co-defendant with the appellant, but later and during the trial, the case was dismissed as to him and proceeded against the Kansas City Distributing Corporation, as the only defendant.

## THE PETITION.

The petition is in substance, as follows:

That the defendant, Distributing Corporation, had its place of business in Kansas City, Missouri, from where it engaged in the business of selling radios, radio supplies and accessories and other musical instruments. The defendant, Byrd, was in the employ of the defendant corporation, as its agent and salesman. That under the terms of his employment and in the promotion of its business, defendant Byrd, drove and operated a Chevrolet automobile, which was then and there and for a long time prior thereto, in a dangerous and defective condition, in that its brakes had been and were improperly adjusted, and in a defective and dangerous condition. That as a result of the carelessness and negligence of the defendants in permitting the brakes to be and remain in said dangerous and defective condition, and in requesting, directing and allowing plain-

tiff to drive said automobile, plaintiff received the injuries of which he complains.

The answer of the Distributing Corporation was a general denial and an allegation of contributory negligence.

At the close of the evidence of plaintiff the case was dismissed as to defendant, Harry Byrd.

The verdict of the jury was for the plaintiff in the sum of $1875.

At the close of the plaintiff's evidence appellant, Distributing Corporation, asked an instruction in the nature of a demurrer to plaintiff's evidence, which was refused.

The sole assignment of error, by plaintiff, was as follows:

''1. The court erred in refusing to instruct the jury at the close of the plaintiff's evidence that under the pleadings and the evidence the verdict should be for defendant, Kansas City Distributing Corporation.''

In substance, the facts shown by the evidence in the trial, are as follows:

Respondent was driving Byrd's car at the time of the accident. That he was driving at the request of Byrd, because he (Byrd) said he was ''tired and tight,'' and in addition wanted to visit with his wife on the way back from Pittsburg, Kansas to Joplin, Mo.

It is urged by respondent that the proximate cause of the injuries to respondent was the negligence of appellant, in not requiring Byrd, who at first was co-defendant in this case, to have the brakes on his car repaired, after Mr. Evans, one of the appellant's officers became aware of the condition of the brakes on the car.

It is our opinion, however, that in using Byrd, appellant's co-defendant, as the only witness, who testified as to Byrd's relationship with the defendant corporation, was bound by his testimony with regard to the understanding and arrangement between Byrd and the appellant, and in that respect Byrd testified that he was the owner of the car. That he drove the car anywhere he wished, without the company's direction or consent. That he was free to go anywhere in his territory that he wished, which he did, unless the appellant called his attention to some specific prospect of sale of which he, Byrd, was not informed. He was free to follow his own route in his own territory at his own time, and in his own way. That appellant had no control over his car and nothing to do with the repair or upkeep thereof. That he, Byrd, bought his own gasoline and oil and everything that was necessary to operate the car, at his own expense; that he was required to furnish all repairs necessary to the use of the car. That the sole remuneration for his (Byrd's) services, was a commission of five per cent on the gross sales, which he made.

Not a word of testimony was offered, tending to show any understanding upon the part of appellant that it had or claimed to have

any control or authority over Byrd's movements, or the use of his car. Within the territory allotted to him, Byrd, was at liberty to go when and where he pleased. Therefore, it appears to us that the evidence disclosed an undisputed degree of independence, so far as Byrd was concerned.

There was no contention that Byrd was not a fit and competent person to exercise independent judgment and discretion in the business for which appellant contracted with him.

The rule in such cases is very clearly stated in the case of Gayle v. Missouri Car & Foundry Company, 177 Mo. l. c. 446, 76 S. W. 987, and cases therein cited:

"The legal test for the determination of this question is stated by Judge THOMPSON in his work on Negligence, Vol. 2, p. 899, Sec. 22 as follows:

" 'The general rule is that one who has contracted with a competent and fit person, exercising independent employment, to do a piece of work not in itself unlawful or attended with danger to others, according to the contractor's own methods, and without his being subject to control, except as to the results of his work, will not be answerable for the wrongs of such contractor, his subcontractor or his servants, committed in the prosecution of such work.

" 'An independent contractor is one who renders service in the course of his occupation, representing the will of his employer only as to the result of his work, and not as to the means by which it is accomplished.'

"This statement of the law specifically approved in Fink v. Mo. Furnace Co., 82 Mo. 276, 52 Am. Rep. 376, in which case it was held that the foregoing statement of the law had been recognized and affirmed in Hilsdorf v. St. Louis, 45 Mo. 98, 100 Am. Dec. 352; Morgan v. Bowman, 22 Mo. 538; Clark v. Ry. Co., 36 Mo. 218; Barry v. St. Louis, 17 Mo. 121. Those cases were reaffirmed in Long v. Moon, 107 Mo. 334, 17 S. W. 810, and again in Crenshaw v. Ullman, 113 Mo. l. c. 639, 20 S. W. 1077. . . . The rule announced by Judge THOMPSON and approved so often by this court, is approved by Shearman and Redfield on Negligence, pp. 164, 165; . . . But it is not easy always to say that the facts of a given case bring it within the definition of an independent contractor. Sherman and Redfield on Negligence declare such contractor to be one who undertakes to do specific piecework for other persons, without submitting himself to their control in the details of the work, save as to the result of the work."

In the case of Salmon v. Kansas City, 241 Mo. l. c. 57, 145 S. W. 16, the following clear and succinct statement and definition of the status of an independent contractor was stated as follows:

"To obtain the shield of an independent contractor the owner or

proprietor must first select a 'competent and fit person' engaged in an independent calling.

"(2) The work committed to him must be neither attended with danger to others, nor unlawful.

"(3) The contractor must be allowed to do the work according to his own methods and only subject to control by the owner as to the results of his work. Without the concurrence of each and all of these conditions, the condition of an independent contractor cannot legally exist.

"The decisions in this State have not only affirmed this doctrine by the adoption of the foregoing definition, but they have held on various occasions when it became necessary to consider the effect of absence of any one of these legal requirements, that the relationship of owner and independent contractor was thereby prevented, and that the owner was left responsible just as if he did the work on his own behalf."

The definition of the term independent contractor and the rule as to his liability is clearly stated in the opinion of Crenshaw v. Ullman, supra, 1. c. 639, and is quoted with approval in the case of Mallory v. Ice & Supply Company, 320 Mo. 1. c. 108, 6 S. W. (2d) 617, and in substance in the case of Timmermann v. Architectural Iron Co., 318 Mo. 1. c. 433, 300 S. W. 283.

We are confronted with the fact that the injuries received by respondent, Manus, in this case, were the direct result of the negligence of Byrd, who having a previous knowledge of the condition of the brakes on his car, and having sole control over the use of the car, while the appellant, according to Byrd's testimony, had no control over his car, therefore for its use or fitness for use could not be responsible, nor for its condition, which resulted in the injuries to respondent.

Mr. Evans, the officer of appellant company, found at the time he borrowed the car and used the same that it was not in good condition, as he thought, at that time. He had no authority to do other than give warning to Byrd of its condition, which warning brought no favorable result of the situation.

Therefore, as a resume of the facts presented by the evidence in this case, we shall again quote from Salmon v. Kansas City, 241 Mo. 1. c. 57, 144 S. W. 16, to ascertain whether appellant in this case was the proper subject for liability in this case.

First: "To obtain the shield of an independent contractor, the owner or proprietor must first select a competent and fit person."

There is not a word of testimony in this case suggesting any incompetence or unfitness of Byrd, save and except the possibility of the suggestion of his intoxication, on the night of the accident. There is no evidence in the record that any such act upon his part, had ever

occurred before, or if so, had ever been brought to the attention of appellant.

Second. "That the work committed to him must be neither attended with danger to others nor unlawful."

The use of the automobile for transportation is so general that it certainly cannot be designated as unlawful, and if it could be treated as an attendant to danger to others, then the use of automobiles would be negligence *per se*, and their very use could be charged as being attended with danger to others and negligence. Such a doctrine we are not prepared to announce.

Third: "The contractor must be allowed to do the work according to his own methods and only subject to control by the owner 'as to the results of his work.'"

The testimony in this case clearly allowed Byrd to do his work at his will, according to his own methods, and only subject to the control of appellant as to results.

The rule being that the concurrence of all three of these conditions establishes the status of the independent contract. The requirements of the above rule are fully and clearly established by the facts in this case. The courts of this State, we think, have clearly affirmed the doctrine fixed by the foregoing definition.

In our opinion, the authorities heretofore cited, we think, are decisive of the status of the erstwhile defendant, Byrd, and also of the duty of the Circuit Court to have sustained appellant's demurrer to the evidence, offered at the close of the evidence. Since there is no evidence in the case, except that of Byrd, himself, whose testimony is not disputed by any other evidence offered in the case, we are therefore confronted by the statement of the law in the Timmermann case, supra, l. c. 434, as follows:

"If the facts in the given case are undisputed, the court may determine, as a matter of law, that the relation of independent contractor exists; but where the facts are disputed the proper course is to leave the question to the jury under proper instruction. In 31 Corpus Juris, page 474, it is said: "Each case must depend on its own facts, and ordinarily no one feature of the relation is determinative, but all must be considered together. Ordinarily the question is one of fact."

In the case of Mattocks v. Emerson Drug Co., 33 S. W. (2d) l. c. 144, paragraph 3, the following statement occurs:

"It is well to bear in mind that whether one is a servant or an independent contractor in a given case is usually to be arrived at by inference from the contract, the nature of the employment and all the relevant facts and circumstances; and that, consequently, the court will not be justified in taking the case from the jury, unless the facts and the legitimate inferences to be drawn therefrom are undis-

puted and unless the evidence is clear and unequivocal.'' And cases therein cited.

Since no other testimony was offered on the question of the contract of employment of Byrd by appellant, the evidence of Byrd is conclusive in considering this matter, part of which was as follows:

''The terms of my employment were oral. I was given Southern Missouri, part of Southern Kansas and Northern Arkansas. I was to receive five per cent of the gross on all material and merchandise sold in that territory, which included the city of Joplin. I was granted a drawing account. They paid me every week, based against a commission. If my commission amounted to more than the drawing account I would get the amount over, and if under, it was charged back to me. I was working on a straight commission basis of five per cent on the gross sales, in a certain territory. I had a car and drove that car at any time, at any place I wanted to, without their direction. They didn't control my movements unless a deal came up that I didn't know about, when they would call me up to go some place particularly. The Company had nothing to do with keeping up my car, or paying my expenses. If the car had been damaged or broken in any way it was to me to get a new one or fix the old one. That was the situation at the time the accident happened. I recall why Manus took the wheel—it was because I was pretty tight and I was tired.''

Upon the question of the court's duty to sustain the demurrer, other States have held as follows:

In the case of Dohner v. Winfield Wholesale Grocer Co., 226 Pac. 767, the Supreme Court of Kansas has held that ''Where there is no material conflict in the evidence with respect to the terms of an oral contract, and such terms are not in any respect ambiguous or uncertain, the relation of the parties to it is a question of law for the court.''

In the case of McCarthy v. Souther, 137 Atlantic, page 445, l. c. 450, the Supreme Court of New Hampshire made the following statement:

''The decisive inquiry is whether the employer had any control over Souther in the management and operation of the latter's automobile. If the evidence leaves it doubtful whether control and direction in respect to the details of the work is reserved, the question is to be resolved as one of fact. Upon this issue there is no evidence whatever to show any such control. Souther owned the car and was entitled to its exclusive possession. So far as appears, his contract of employment gave his employer no right of direction for any use of the car by others, and he was to maintain and run it as his personal affair. The allowance made for expenses implied no right and no liability on the employer's part in respect to its maintenance and operation. No

authority for the employer to direct Souther how to run the car is to be inferred from the relations between them, and the employer had no more charge or control over Souther's means and manner of transportation than if the travel had been by train. While the employer might assign the routes and times for Souther's trips with the car, it might not direct how the trips should be made, or how the car should be managed. The employer having no right, if present, to direct Southern in the way he ran and used the car, is not liable for the way it was run and used. How the car was run was its affair only in the sense of its interest in the results obtained from the proper operation, and that interest was no evidence of a right to run it, or to say in what way it should be run as to the details of operation. A directed verdict for the employer should have been ordered.''

The case at bar is on ''all fours'' with the statement of facts and declaration of law above stated.

It is our opinion, that the demurrer to the evidence, offered by appellant at the close of plaintiff's case, should have been sustained. It appears to us from the testimony that Byrd, a co-defendant of appellant, was from his own testimony, an independent contractor. There was no conflicting evidence on that point, offered at the trial. His testimony with nothing to the contrary, clearly established his right of independence of conduct and judgment. He went where and when he pleased, in furtherance of an opportunity to sell. According to his testimony he went where and when he thought there was the best opportunity to sell.

The rule distinguishing the line of demarkation between the servant who is subject to will and direction of the master and whose conduct in the business is to be controlled by the employer, and for whose acts as such employee, the master is liable, is not akin to the rule relating to that which pertains to the person who contracts to do or perform services in the interest of the employer, but in the manner and at the time and by the means of his own. He must be competent and fit for exercising an independent employment not in itself unlawful or attended with dangers to others, according to his own methods, without his being subject to control, except as to the results of his work, and in such cases the employer will not be answerable for the wrongs of such contractor in the prosecution of his work. An independent contractor is one who renders service in the course of an occupation, representing the will of his employer only as to the result of his work and not as to the means by which it is accomplished.

The will of appellant was to sell its merchandise, for which it was willing to pay five per cent of the gross selling price. In the case of Gayle v. Missouri Car & Foundry Co., supra, l. c. 447, it is stated:

''An express contract to pay by the job is always strong evidence

that the relation of master and servant does not exist. . . . When the facts are undisputed no doubt exists that the court may declare as a matter of law whether one is an independent contractor or merely a servant. [Long v. Moon, 107 Mo. 334.] "But where the facts are disputed the proper course it seems to us, must be to leave it to the jury under proper instructions to say whether one was an independent contractor or a servant, accordingly as the facts are found."

In the light of the testimony of witness Byrd, who was the only witness who testified upon that question, it appears to us that there was no evidence offered at the trial of this case which may be reasonably said to controvert the theory that he was clearly an independent contractor and that therefore appellant cannot under the law, be held liable for respondent's injuries.

It is emphasized by respondent, and testified to by Mr. Byrd, that Mr. Evans, an officer of the appellant, while in Joplin on one occasion, some two weeks before the accident, out of which grew this lawsuit, borrowed Byrd's car and when he returned it, said to Byrd: "What is the matter with those brakes?" This statement it was contended by respondent, brought the knowledge of the condition of the car to the appellant. The most that can be said for that conversation was that knowledge of the condition of the car was brought to Byrd, and could not as we understand the law to be, amount to any such knowledge as would result in any liability upon the part of appellant. To hold appellant liable in this case, as the evidence discloses, would be to open the courts for the prosecution of lawsuits in cases where a neighbor, for instance, in rural communities should, for consideration, market small quantities of produce for a number of his neighbors. Could it be reasonably contended that in the event of an accident, the neighbor who sent his products to market by the neighbor who drove his own car, over which the neighbor who shipped, had no control, be responsible for the results of an accident in driving? If so, the shipper by rail or by truck, could be as well held for injury done to a person or vehicle by the train or trucks, carrying his shipment of merchandise. To so hold would be to unduly increase the hazard of the patron of the independent contractor, whether a salesman or otherwise.

It certainly appears to us that in this case Byrd, whose negligence in the use of his own means of transportation, over which appellant had no control and for which negligence of the owner, appellant could not either in law or reason be liable. It is our opinion that appellant's demurrer, offered at the close of respondent's testimony should have been sustained; and that on account of the refusal of the trial court to so do, this cause ought to be and is hereby reversed. *Bailey* and *Smith, JJ.*, concur.