ERNEST BARNES, an Infant, by his next Friend, J. H. BARNES, v. REAL SILK HOSIERY MILLS, a Corporation, and RAY FERGERSON, Appellants.—108 S. W. (2d) 58.

Division One, July 30, 1937.

564

*Sprinkle & Knowles* and *Paul C. Sprinkle* for appellants.

*Louis Wagner, Cowgill & Popham* and *John F. Cook* for respondent.

BRADLEY, C.—Action for personal injury. Verdict for $10,000 was returned against defendants, and they separately appealed from the judgment entered.

October 18, 1932, plaintiff was struck on Prospect Avenue, Kansas City, Missouri, by an automobile driven by defendant, Fergerson, and it is claimed that, at the time plaintiff was injured, Fergerson was in the employ of the corporate defendant and acting within the scope of his employment, and that under the facts, both defendants were liable. The charges of negligence submitted to the jury were "high, dangerous and excessive speed under the conditions then and there existing," and that Fergerson "failed to keep a vigilant and careful lookout ahead for persons upon said street." Defendants separately answered by general denial.

Error is assigned on the refusal of separate demurrers to the evidence at the close of the case, on the admission of evidence, and on plaintiff's Instruction A.

The chief contention of the corporate defendant is that the evidence was not sufficient to make a submissible case against it under the doctrine of *respondeat superior*. The corporate defendant is a manufacturer of silk hosiery, etc., and has its principal office in Indianapolis, Indiana, and has a branch office in Kansas City, Missouri. Defendant Fergerson's home was in St. Joseph, Missouri, but at the time of plaintiff's injury he (Fergerson) was a salesman of his codefendant, and, in his own car, was on his way to the territory in Kansas City that had been assigned to him, and this was his first trip out. A copy of the contract between the defendants was in evidence. We might say here that plaintiff objected and excepted to the introduction of the *copy*, but without detailing the evidence as to the competency of the copy, we think it is sufficient to say that it was properly admitted.

For convenience, we hereinafter refer to the corporate defendant as the Mills, as appears in the body of the contract and also in the briefs.

By the contract, Fergerson agreed to solicit orders from day to day for the Mills in the territory assigned to him "upon the terms and conditions" of the contract, and he agreed to deposit $3 for sample case and contents or furnish a satisfactory guarantor for $10, the value of the sample case and contents. Fergerson was to deliver all orders taken by him to the Mills in Indianapolis, or to the Kansas City branch manager. The orders were to be taken "only on order blanks furnished by the Mills, and upon the prices, terms and conditions named in such order blanks or in such printed price lists, schedules or instructions as may be issued by the Mills from time to time, the Mills reserving the right to change such prices, terms and conditions whenever it sees fit." When Fergerson took

an order, he was to collect "as first payment the amount of the deposit specified in the order blanks" or in printed instructions "as may be issued by the Mills from time to time." The first payment to be collected by Fergerson constituted "his entire and sole compensation," and no order was to be taken without the "first payment" being made. "Violation of any rule or regulation governing profit sharing automatically disqualified him from any amounts of profit sharing which may be due him up to and including the date of such violation."

All equipment and samples remained the property of the Mills and use thereof by Fergerson was permitted only while he was "selling the products of the Mills." The contract further provided: "It is distinctly understood that this contract constitutes an original and independent undertaking on the part of the undersigned, and, subject to the provisions hereof, he shall at all times be free from the control or direction of the Mills as to the time when he shall solicit orders.

"This contract contains all the terms of agreement between the parties, and no other agreement shall be binding unless in writing and signed by the undersigned and an officer at the Mills in Indianapolis. No branch manager or other agent or employee has the right or authority to bind the Mills by any agreement other than the one signed below by the parties hereto.

"This agreement may be terminated by either party upon two days notice to the other, and the undersigned agrees that for a period of six months after any termination of this agreement he will neither sell nor solicit the sale of hosiery or lingerie direct to the wearer, within the territory hereinabove referred to."

Fergerson, called by plaintiff, testified that he became a salesman for the Mills, October 17, 1932, by answering an ad in a Kansas City newspaper, and plaintiff was permitted to introduce four of these ads. All are similar. Here is one. "I will employ a man with car for steady employment. Commission, profit-sharing, overriding, part of car expenses paid. Apply 9 to 12, 533 Exchange Building."

Instead of making a deposit for the sample case and contents Fergerson gave a written guaranty, signed by another, to pay for these, should he fail to return on demand. This guaranty or bond was headed by the words, "Employment Department." When the contract was executed, Fergerson dealt with G. R. Fouche, branch manager in Kansas City. After getting the sample case, samples of merchandise, blanks, etc., Fergerson was given instructions on how the merchandise was made, how to sell, etc. In other words, he was given a line of sales talk. He was told that there were meetings for salesmen at 7:30 A. M., but he did not remember that he was

instructed to attend. Fouche, the manager, testified that he could assign a salesman to different territory; that all salesmen "worked on the same terms;" that his "supervision of all the salesmen was just the same. Q. Well, didn't you have charge of the discharging of them? A. Under the terms of the contract, I presume that I did." The evidence of the Mills was that it had no knowledge that Fergerson had a car, and to the effect that a car was not necessary.

Roy Beatty, a witness for plaintiff, testified that he had been a salesman for the Mills from 1925 to 1932, inclusive; that in his work he used a car "with the knowledge of the company;" that while out in his territory he received "orders from the management of the company to do certain things," but what orders were given does not appear. Joe Cramer worked for the Mills from 1929 to about Christmas, 1932. He testified that he was "more a crew manager and trainer;" that he took new men out in his car and trained them. And speaking of salesmen generally, Cramer said: "We usually had to call in several times during the day so the manager would know where we were," and that on such occasions they received orders "what to do" and "lots of times" told "to come in or go some other place."

■ "It is a general rule that one who has contracted with a competent and fit person, exercising an independent employment, to do a piece of work not in itself unlawful, or of such a nature that it is likely to become a nuisance, or to subject third persons to unusual danger, according to the contractor's own methods, and without being subject to control except as to the results of his work, and subject to other qualifications hereafter stated,—will not be answerable for the wrongs of such contractor, his subcontractors or his servants, committed in the prosecution of such work." [1 Thompson on Negligence (2 Ed.), p. 568, sec. 621; Gayle v. Missouri Car & Foundry Co., 177 Mo. 427, l. c. 446, 76 S. W. 987; Fink v. Mo. Furnace Co., 82 Mo. 276, 52 Am. Rep. 376; Manus v. Kansas City Distributing Corp., 228 Mo. App. 905, 74 S. W. (2d) 506.]

"To obtain the shield of an independent contractor, the owner or proprietor must: First, select 'a competent and fit person,' engaged in an independent calling; second, the work committed to him must be neither 'attended with danger to others' nor unlawful; third, the contractor must be allowed to do the work according to his own methods and only subject to control by the owner 'as to the results of his work.' Without the concurrence of each and all of these conditions, the condition of independent contractor cannot legally exist." [Salmon v. Kansas City, 241 Mo. 14, l. c. 57, 145 S. W. 16, 39 L. R. A. (N. S.) 328.]

Section 2, Restatement of the Law of Agency, by American Law Institute, defines *master, servant,* and *independent contractor* as follows:

"A master is a principal who employs another to perform service in his affairs and who controls or has the right to control the physical conduct of the other in the performance of the service."

"A servant is a person employed by a master to perform service in his affairs whose physical conduct in the performance of the service is controlled or is subject to the right to control by the master."

"An independent contractor is a person who contracts with another to do something for him, but who is not controlled by the other nor subject to the other's right to control with respect to his physical conduct in the performance of the undertaking."

As supporting the contention that the facts here make the question of the application of the doctrine of *respondeat superior* a question for the jury, plaintiff cites, among others, Maltz v. Jackoway-Katz Cap Co. et al., 336 Mo. 1000, 82 S. W. (2d) 909; Kincaid v. Birt (Mo.), 29 S. W. (2d) 97; In re McMenamy's Guardianship, 307 Mo. 98, 270 S. W. 662; Ostrander v. Messmer, 315 Mo. 1165, 289 S. W. 609; Kelso v. W. A. Ross Construction Co., 337 Mo. 202, 85 S. W. (2d) 527; Margulis v. Natl. Enameling & Stamping Co., 324 Mo. 420, 23 S. W. (2d) 1049; Heisey et al. v. Tide Water Oil Co. (Mo. App.), 92 S. W. (2d) 922; Burgess v. Garvin, 219 Mo. App. 162, 272 S. W. 108; Cholet v. Phillips Petroleum Co. (Mo. App.), 71 S. W. (2d) 799; Coffman v. Shell Petroleum Corp., 228 Mo. App. 727, 71 S. W. (2d) 97; Brunk v. Hamilton Brown Shoe Co., 334 Mo. 517, 66 S. W. (2d) 903; Byrnes v. Poplar Bluff Printing Co. (Mo.), 74 S. W. (2d) 20; Chiles v. Met. Life Ins. Co. (Mo. App.), 91 S. W. (2d) 164; Gordner v. St. Louis Screw Co., 201 Mo. App. 349, 210 S. W. 930; Linton v. St. Louis Lightning Rod Co. (Mo. App.), 285 S. W. 183; Schmitt v. American Press et al. (Mo. App.), 42 S. W. (2d) 969. These cases announce no different guide than is reflected in the definitions quoted or in the excerpt from the Salmon case, supra. Each is based on its own particular facts.

In determining whether one is such character of agent as to make the employer liable for the acts of the alleged agent, definitions serve as a "general outline of the field of inquiry, as is recognized in the universal expression to the effect that each case must depend upon its own surroundings, facts and circumstances, and be subjected to established specific tests in aid of the ultimate decisive test, right of control." [Maltz case, 336 Mo. 1000, 82 S. W. (2d) 909, l. c. 916.] "The fact that the employer has control over the amount of work to be done or has reserved the power to make alterations in the plans will not necessarily have the effect of creating the relation of master and servant." [14 R. C. L., p. 70, sec. 7; Kourik v. English et al., 340 Mo. 367, 100 S. W. (2d) 901, l. c. 904.]

In the present case the Mills, so far as appears, had no control

or right of control over Fergerson as to the *manner* by which he went to and from his territory or while working in the territory. Neither was there any evidence tending to show that the Mills had any right of control over Fergerson as to his physical conduct in soliciting orders. It is true that the Mills could discharge Fergerson on two days' notice, but that alone is not of such substance as to make the liability of the Mills a question for the jury. [Vert v. Metropolitan Life Insurance Company, No. 34,612, and handed down concurrently with the present opinion.]

It is plain, we think, that the chief duty of Ferguson was to bring about contractual relations between the Mills and third persons, and that the *character* of agency existing between the Mills and Fergerson was quite like the situation obtaining in Manus v. Kansas City Distributing Corporation, 228 Mo. App. 905, 74 S. W. (2d) 506. In that case it appears one Byrd sold radios for defendant in a certain territory. Manus was injured on account of the negligence of Byrd in driving his car, and sought to recover from the defendant. It was held that defendant was not liable. In ruling the Manus case the court said: "Not a word of testimony was offered tending to show any understanding upon the part of appellant that it had or claimed to have any control or authority over Byrd's movements, or the use of his car. Within the territory allotted to him, Byrd was at liberty to go when and where he pleased. Therefore, it appears to us that the evidence disclosed an undisputed degree of independence, so far as Byrd was concerned."

It is our conclusion and we rule that the instruction of the Mills in the nature of a demurrer to the evidence at the close of the case should have been given.

The briefs deal almost entirely with defendant Real Silk Hosiery Mills. However, we have examined the assignments as they affect defendant Fergerson. Without further extending the opinion, we think it sufficient to say that we find nothing that would justify interference with the judgment as to defendant Fergerson.

The judgment as to defendant Fergerson should be affirmed, and as to defendant Real Silk Hosiery Mills, the judgment should be reversed, and it is so ordered. *Ferguson* and *Hyde, CC.*, concur.

PER CURIAM:—The foregoing opinion by BRADLEY, C., is adopted as the opinion of the court. All the judges concur, except *Douglas, J.*, not voting because not a member of the court when cause was submitted.